UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ASHLEY O.,

                        Plaintiff,

      v.

ANDREW M. SAUL,[1] Commissioner of
Social Security,

                        Defendant.
_____

**DECISION
and
ORDER

19-CV-00578-LGF
(consent)**

APPEARANCES:         LAW OFFICES OF KENNETH R. HILLER
                            Attorneys for Plaintiff
                            KENNETH R. HILLER, and
                            JUSTIN GOLDSTEIN, of Counsel
                            6000 Bailey Avenue
                            Suite 1A
                            Amherst, New York 14226

                            JAMES P. KENNEDY, JR.
                            UNITED STATES ATTORNEY
                            Attorney for Defendant
                            Federal Centre
                            138 Delaware Avenue
                            Buffalo, New York 14202, and

                            ARIELLA RENEE ZOLTAN
                            Special Assistant United States Attorney, of Counsel
                            Social Security Administration
                            Office of the General Counsel, of Counsel
                            26 Federal Plaza, Room 3904
                            New York, New York 10278

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and pursuant to Rule 25(d) of the Federal Rules of Civil Procedure is automatically substituted as the defendant in this suit with no further action required to continue the action.

**JURISDICTION**

On October 14, 2020, this case was reassigned to the undersigned before whom the parties consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this Court's June 29, 2018 Standing Order. (Dkt. No. 13). The court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on motions for judgment on the pleadings, filed on July 21, 2020, by Plaintiff (Dkt. No. 10), and on September 18, 2020, by Defendant (Dkt. No. 12).

**BACKGROUND and FACTS**

Plaintiff Ashley O. ("Plaintiff"), brings this action pursuant to the Social Security Act ("the Act"), seeking review of the Commissioner of Social Security ("the Commissioner" or "Defendant") decision denying her applications for Social Security Disability Benefits ("SSDI") benefits under Title II of the Act and Supplemental Security Income ("SSI") under Title XVI of the Act ("disability benefits"). Plaintiff, born on February 9, 1991 (R. 173), stopped working on June 15, 2013, after being fired from her job as a food service worker at a group home, alleges that she became disabled on June 15, 2011, as a result of attention deficit hyperactivity disorder ("ADHD"), migraine headaches and a bi-polar disorder. (R. 176). Plaintiff's disability application was initially denied by Defendant on September 17, 2015 (R. 15), and pursuant to Plaintiff's request, a hearing was held before Administrative Law Judge Benjamin Chaykin ("Judge Chaykin" or "the ALJ") on December 11, 2017, where Plaintiff, represented by Jeanne Murray, Esq. ("Ms. Murray"), appeared and testified. (R. 30-57). Vocational Expert James Soldner, Ph.D., ("the VE" or "Dr. Soldner"), also appeared and testified. (R. 51-

57).  On January 16, 2019, Plaintiff filed an appeal with the Appeals Council, who, upon denying review of Plaintiff's claim rendered Judge Dennison's decision the final decision of the Commissioner for judicial review.  (R. 1-6).  This action followed on May 3, 2019, with Plaintiff alleging that the ALJ erred by failing to find her disabled.  (Dkt. No. 1).

On July 21, 2020, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Dkt. No. 10-1) ("Plaintiff's Memorandum").  Defendant filed, on September 18, 2020, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Dkt. No. 11-1) ("Defendant's Memorandum").  On October 9, 2020, Plaintiff filed a reply to Defendant's memorandum ("Plaintiff's Reply").  (Dkt. No. 12).  Oral argument was deemed unnecessary.

On June 15, 2011, Plaintiff sought treatment from Amherst Medical Associates, L.L.P., ("Amherst Medical"), for lower back pain after falling while riding a horse.  (R. 884).  An X-ray of Plaintiff's lumbar spine was normal.  (R. 886).

On August 26, 2011, Steve Stone, M.D. (Dr. Stone"), of Dent Neurologic Institute ("Dent"), completed a neurological assessment on Plaintiff, diagnosed Plaintiff with migraine headache without aura,[2] non-intractable[3] and administered a Toradol (anti-inflammatory) infusion.  (R. 893).

---

[2] A migraine headache without aura is associated with nausea, vomiting or both, sensitivity to light, sound and movement.
[3] A non-intractable migraine headache last up to 72 hours and may be treated with medication.

On August 14, 2012, Laszlo Mechtler, M.D. ("Dr. Mechtler"), of Dent, reviewed a magnetic resonance imaging ("MRI") scan of Plaintiff's brain, and noted normal results. (R. 919).

On August 21, 2012, Nurse Practitioner Elizabeth Smith ("N.P. Smith"), completed a follow-up examination of Plaintiff, noted that Plaintiff reported improved headaches occurring only twice weekly, that Plaintiff experienced suicidal thoughts, and was receiving psychiatric treatment from Christopher G. Martin, M.D. ("Dr. Martin"). (R. 920).

On December 12, 2012, Physician Assistant Karli Benamati ("P.A. Benamati"), completed a neurological evaluation on Plaintiff who reported head trauma after being in a car accident on December 4, 2012, noted that Plaintiff reported a mild headache with dizziness and spinning, evaluated Plaintiff with a closed concussion without loss of consciousness and advised Plaintiff to refrain from horseback riding for one week to prevent further injury. (R. 939-40). On January 10, 2013, P.A. Benamati noted that Plaintiff reported no headache for the previous week, dizziness and lightheadedness. (R. 948).

On October 2, 2013, a brain MRI of Plaintiff revealed an opacified (inflamed) maxillary sinus. (R. 963-65).

On November 8, 2013, Dr. Martin provided mental health counseling for Plaintiff, and noted that Plaintiff reported riding her horse on a weekly basis, and no neurological symptoms. (R. 972).

On May 12, 2014, P.A. Benamati completed a neurological examination on Plaintiff, noted that Plaintiff reported a severe headache treated with over-the-counter medication, dizziness, and ordered a second brain MRI.  (R. 290).

On June 27, 2014, P.A. Benamati noted that Plaintiff reported falling from her horse, loss of consciousness, severe headache and dizziness.  (R. 291-93).  P.A. Benamati treated Plaintiff with an occipital nerve block injection treatment[4] on November 12, 2015 (R. 399-402), January 14, 2016 (R. 397-99), February 23, 2016 (R. 393-96), April 26, 2016 (R. 390-93), February 24, 2017 (R. 376-78), July 26, 2017 (R. 368-71), and September 14, 2017.  (R. 366).

On August 12, 2015, Susan Santarpia, Ph.D., ("Dr. Santarpia"), completed a consultative psychiatric examination on Plaintiff and evaluated Plaintiff with a mild impairment to attention and concentration due to lack of effort, intact recent and remote memory skills, the ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration and a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress.  (R. 358-7-58).

Dr. Martin provided medication management and psychiatric counseling to Plaintiff on July 11, 2014 (990-92), October 14, 2014 (R. 424-25), August 28, 2017 (R. 450-51), and September 20, 2017 (R. 428-29).  On November 10, 2017, Dr. Martin completed a check-box mental residual capacity questionnaire wherein Dr. Martin noted

---

[4] Occipital nerve block is a procedure where a steroid is injected at the base of an individual's skull to relieve headache pain.

5

that Plaintiff was unable to meet competitive work standards in all areas of functioning and had no useful ability to maintain regular attendance and be punctual within customary strict tolerances, complete a normal workday or workweek without interruptions from psychologically based symptoms, respond appropriately to changes in a routine work setting, was seriously limited in her ability to interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of neatness, travel to unfamiliar places and use public transportation, and would likely miss more than four days of work each month.  (R. 497-99).

## DISCUSSION

A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or the decision is based on legal error.  *See* 42 U.S.C. 405(g); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  "Substantial evidence" means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

### A.   Standard and Scope of Judicial Review

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).  When evaluating a claim, the

Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight.  *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).  The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence.  *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

      The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.*

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[6] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, at * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must

---

[6] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g). The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F.2d at 467.

In reviewing the administrative finding, the court must follow the five-step analysis and 20 C.F.R. § 416.935(a) ("§ 416.935(a)"), to determine if there was substantial evidence on which the Commissioner based the decision. 20 C.F.R. § 416.935(a); *Richardson*, 402 U.S. at 410.

In this case, the ALJ determined that Plaintiff had the severe impairments of affective disorder, anxiety disorder, ADHD, that Plaintiff's migraine headaches, history of ACL tear status-post repair, tortuous colon, cervicalgia (neck pain), lumbar sprain, closed head injury, concussions, abdominal pain, GERD, syncope (loss of consciousness from low blood pressure) and pre-syncope, dizziness, dermatitis, paresthesia, spells, leg sprain and contusion, epigastric pain, functional intestinal disorder, history of cholecystectomy, inflammatory bowel disease, vomiting, dehydration, history of Achilles tendon repair and finger surgery are not severe, Plaintiff's impairments do not meet or medically equal a listed impairment, and that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with limitations to simple, routine tasks limited to occasional interaction with supervisors co-workers and the general public. (R. 18-21). The ALJ further determined that Plaintiff has no past relevant work and that jobs exist that a person of

Plaintiff's age, educational background and residual functional capacity would be capable of performing that include the occupations of laundry worker, stores laborer, and industrial cleaner. (R. 20-24). Plaintiff contends that the ALJ erred in evaluating Plaintiff's headache and neurological impairments during step two of the disability review process, Plaintiff's residual functional capacity assessment, and Plaintiff's credibility. Plaintiff's Memorandum at 16-30.

**B. Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether the disability claimant had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 ("§ 404.1509"), and significantly limits the claimant's ability to do "basic work activities." If no severe impairment is found, the claimant is deemed not disabled and the inquiry ends. 20 C.F.R. § 404.1420(a)(4)(ii).

The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 404.1521(b)"), 416.921(b). The step two analysis may do nothing more than screen out *de minimus* claims, *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and a finding of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work. *Rosario v. Apfel,* 1999 WL 294727, at

10

*5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856).

In this case, the ALJ determined that Plaintiff suffered from the severe impairments of affective disorder, anxiety disorder, ADHD, and that Plaintiff's migraine headaches, closed head injury, concussions, syncope and pre-syncope, dizziness, and headache impairment were not severe. (R. 11). Plaintiff contends that the ALJ's step two findings are erroneous, as the ALJ failed to consider Plaintiff's neurological impairments as severe impairments during step two of the ALJ's disability analysis. Plaintiff's Memorandum at 23-28. Defendant maintains that Plaintiff's mere diagnosis of migraine headaches was not enough to require the ALJ to find Plaintiff's condition severe as Plaintiff's headache symptoms improved when Plaintiff followed her medication treatment regimen. Defendant's Memorandum at 13-24. Plaintiff's motion on this issue is without merit, as any error by the ALJ with respect to a failure to consider Plaintiff's neurological impairment is harmless error.

A plain reading of the record establishes that the ALJ included consideration of Plaintiff's recovery and neurological examination results following Plaintiff's concussions in 2013 and 2014, Plaintiff's positive response to her migraine medication treatment, and Plaintiff's normal EEG and MRI tests in step two of the ALJ's disability review analysis. (R. 18). Notably absent from the ALJ's review is any discussion of Plaintiff's occipital nerve block treatments (R. 366-402), although Plaintiff's headaches improved following each treatment. (R. 368-71, 376-79, 393-402). Based on the foregoing, it is clear that the ALJ in this case erred by not deeming Plaintiff's headaches severe under step two of the disability review analysis. Any such error resulting from such error is

11

harmless, however, because the ALJ proceeded beyond step two of the disability analysis and considered the effect of all of the Plaintiff's impairments throughout the remaining steps of the analysis. *See Reices-Colon v. Astrue*, 523 Fed. App'x. 796, 798 (2d Cir. 2013) (harmless error where ALJ erred in excluding severe impairments from step two of the disability analysis but proceeded to evaluate claimant's disability based on such severe impairments through the remaining steps of the sequential analysis). Specifically, the ALJ noted that he considered all of Plaintiff's symptoms in the ALJ's residual functional capacity assessment (R. 21), including Plaintiff's headache impairment, affective disorder, anxiety, ADHD, resulting limitations to Plaintiff's concentration, persistence, ability to maintain pace, adapt and manage herself, and included such limitations in Plaintiff's residual functional capacity by limiting Plaintiff to work that includes simple, routine tasks and no more than occasional interaction with others. (R. 21). The ALJ's residual functional capacity assessment of Plaintiff also included detailed discussion of Dr. Stone and N.P. Benamati's findings that Plaintiff's headaches were well managed by medication (R. 18, 300-09), Plaintiff's unremarkable neurological examinations (R. 751), and normal brain MRI and EEG test results (R. 380), further rendering any failure by the ALJ, with regard to Plaintiff's severe headaches at step two, harmless. Plaintiff's motion on this issue is accordingly DENIED.

## C. <u>Residual functional capacity</u>

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*,

675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv) and prove that substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294. In addition, the Commissioner must establish that the claimant's skills are transferrable to the new employment if the claimant was employed in a "semi-skilled" or "skilled" job. *Id.* at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296. The Second Circuit requires that "all complaints . . . must be considered together in determining . . . work capacity." *DeLeon v. Secretary of Health and Human Services,* 734 F.2d 930, 937 (2d Cir. 1984).

Plaintiff alleges that the ALJ's residual functional capacity assessment of Plaintiff is without support of substantial evidence, as the ALJ improperly afforded little weight to

13

findings set forth in Dr. Martin's November 10, 2017, mental residual functional capacity questionnaire and failed to provide good reasons for affording Dr. Martin's findings little weight. Plaintiff's Memorandum at 17-23. Defendant maintains that the ALJ provided sufficient reasons for affording little weight Dr. Martin's findings, and that the ALJ's decision is supported by substantial evidence in the record. Defendant's Memorandum at 17-22. Plaintiff's motion is without merit.

Generally, the opinion of a treating physician is entitled to significant weight, but is not outcome determinative and only entitled to significant weight when "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record.'" *Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed. Appx. 34, 35 (2d Cir. 2017) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008), and 20 C.F.R. § 404.1527(d)(2)). In instances where the ALJ discounts a treating physician's opinion, the ALJ must set forth "good reasons" for doing so. *Burgess*, 537 F.3d at 129 (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)). In this case, the ALJ provided sufficient reasons for affording Dr. Martin's mental residual functional capacity questionnaire little weight.

As relevant, on November 10, 2017, Dr. Martin completed a check-box questionnaire finding Plaintiff with no ability to meet competitive work standards in all areas of functioning, maintain regular attendance and be punctual within customary strict tolerances, complete a normal workday or workweek without interruptions from psychologically based symptoms, respond appropriately to changes in a routine work setting, and serious limitations to Plaintiff's ability to interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of

neatness, travel to unfamiliar places and use public transportation, and noted that Plaintiff would likely miss more than four days of work each month. (R. 497-99). Here, the ALJ found Dr. Martin's opinion, as stated in his checkbox questionnaire, was inconsistent with Plaintiff's testimony that she was able to care for her infant daughter, perform household chores, continue to engage in competitive horseback riding and work part-time as a stable hand, and Plaintiff's consistently normal mental status examinations (R. 22), such finding that provides reasons sufficient to understand the ALJ's determination as to the weight given to Dr. Martin's opinion regarding Plaintiff's capacity to work.

Consistent with Dr. Martin's normal neurological examinations of Plaintiff (R. 312, 314, 316, 320, 322, 324, 326, 416, 422, 424, 426, 428, 972), and absent evidence of any additional limitations in the record that would otherwise erode Plaintiff's ability to function *i.e.,* a full range of work at all exertional levels with limitations to simple, routine tasks, occasional interaction with supervisors, co-workers and the public (R. 20-21), the ALJ's residual functional capacity assessment of Plaintiff that limited Plaintiff to low stress, simple work (R. 20-21), is supported by substantial evidence. (R. 16). *See Reynolds v. Commissioner of Social Security*, 2019 WL 2020999, at *4 (W.D.N.Y. May 8, 2019) (the burden to demonstrate functional limitations is the claimant's); *Gomez v. Commissioner of Social Security,* 2020 WL 1322565, at *4-5 (W.D.N.Y. Mar. 20, 2020) (residual functional capacity that limits claimant to simple routine tasks in low stress work accounts for moderate-to-marked limitations dealing with stress)). Plaintiff's motion on this issue is therefore DENIED.

Plaintiff's further contention, Plaintiff's Memorandum at 29-30, that the ALJ erred in evaluating Plaintiff's credibility is also without merit. It is the function of the ALJ, not the court, to assess the credibility of witnesses. *See Tankisi v. Commissioner of Social Security*, 521 Fed. Appx. 29, 35 (2d Cir. 2013). Pain or other symptoms may be important factors contributing to a disability claimant's functional loss and affects a claimant's ability to perform basic work activities where relevant medical signs or laboratory findings show the existence of a medically determinable impairment that could "reasonably" be expected to cause the associated pain or other symptoms. 20 C.F.R. § 404.1529(c)(3) ("§ 404.1529(c)"). "A claimant's testimony is entitled to considerable weight when it is consistent with and supported by objective medical evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms." *Hall v. Astrue*, 677 F.Supp.2d 617, 630 (W.D.N.Y. 2009) (citing *Latham v. Commissioner of Social Security*, 2009 WL 1605414, at *15 (N.D.N.Y. 2009)). The relevant factors to be considered by an ALJ under § 404.1529(c), include signs and laboratory findings, statements from the claimant and others, medical opinions from treating and non-treating sources and the claimant's activities of daily living. In this case, the ALJ's credibility assessment of Plaintiff included consideration of Plaintiff's medication and treatment history, non-compliance with her treatment regimen, benign psychiatric evaluations, and testimony that she was able to care for her infant daughter, complete household chores, and engaged in competitive horseback riding (R. 18-21), consistent with the factors required under § 404.1529(c). Based on the foregoing, the ALJ's credibility assessment of Plaintiff was based on a thorough discussion of Plaintiff's testimony, Plaintiff's reported

16

activities of daily living, and improved symptoms, and is supported by substantial evidence in the record that contradicts Plaintiff's allegations of limitations from her neurological and headache impairments.  The ALJ's credibility assessment is therefore based on substantial evidence sufficiently accounted for in the ALJ's residual functional capacity assessment of Plaintiff.  Plaintiff's motion for remand on the issues of Plaintiff's credibility is thus without merit and is DENIED.  *See Sloan v.* Colvin, 24 F.Supp.3d 315, 328-29 (W.D.N.Y. 2014) (no remand where ALJ evaluated Plaintiff's credibility based on Plaintiff's testimony, activities of daily living and conflicting medical evidence).

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Dkt. No. 10) is DENIED; Defendant's motion (Dkt. No. 11) is GRANTED.  The Clerk of the Court is ordered to close the file.  SO ORDERED.

/s/ *Leslie G. Foschio*
_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   January 25, 2021
         Buffalo, New York